Submitted April 29, convictions for second-degree assault reversed and remanded with instructions to merge guilty verdicts on those counts into one conviction for second-degree assault and for resentencing; otherwise affirmed July 28, petition for review denied December 23, 2010 (349 Or 480)

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

ALAN ARTHUR WATKINS,
*Defendant-Appellant.*

Umatilla County Circuit Court
CF060279; A138692

236 P3d 770

Peter Gartlan, Chief Defender, and Meredith Allen, Senior Deputy Public Defender, Appellate Division, Office of Public Defense Services, filed the briefs for appellant.

John R. Kroger, Attorney General, Jerome Lidz, Solicitor General, and Douglas F. Zier, Assistant Attorney General, filed the brief for respondent.

Before Haselton, Presiding Judge, and Armstrong, Judge, and Edmonds, Senior Judge.

HASELTON, P. J.

## HASELTON, P. J.

Defendant appeals a judgment of conviction for one count of attempted aggravated murder, ORS 163.095 (2003), *amended by* Or Laws 2005, ch 264, § 17; seven counts of assault in the second degree, ORS 163.175 (2003), *amended by* Or Laws 2005, ch 22, § 110; one count of assaulting a public safety officer, ORS 163.208; one count of unlawful possession of a weapon by a prison inmate, ORS 166.275; and one count of unlawful use of a weapon, ORS 166.220 (2003), *amended by* Or Laws 2009, ch 556, § 5. Defendant contends that the trial court erred by failing to merge the guilty verdicts on the seven counts of second-degree assault into two convictions. As amplified more fully below, we agree with defendant that the trial court did err; however, we conclude that, as a matter of law, only one conviction, and not two convictions, of second-degree assault must be entered. Accordingly, we reverse the convictions and remand with instructions to merge the guilty verdicts on those counts into one conviction for second-degree assault.

The facts underlying defendant's convictions are brief and undisputed. On August 25, 2005, defendant, who was an inmate at Eastern Oregon Correctional Institution (EOCI), attacked Hinkle, the sole corrections officer on duty in defendant's housing unit at EOCI, with a handmade knife or "shank." Defendant attacked Hinkle without warning, tackled him, and began stabbing him. At one point, after defendant had stabbed him several times, Hinkle managed to kick defendant away from him and activate an alarm on his waistband to summon help. Within a span of three to four seconds, defendant watched Hinkle activate the alarm and then resumed his attack. Other officers subsequently arrived and rescued Hinkle. Hinkle incurred seven stab wounds to the left side of his face, scalp, left ear, and left hand. He also suffered from various abrasions or bruising on his wrist, nose, neck, and scalp.

The state charged defendant with 21 counts of attempted aggravated murder, seven counts of second-degree assault, seven counts of assaulting a public safety officer, and the two aforementioned weapons charges. However, the state ultimately proceeded to trial on just six of the

21 counts of attempted aggravated murder, in addition to the second-degree assault, assault of a public safety officer, and weapons charges. A jury rendered a verdict of guilty on all counts, and the trial court entered the convictions noted above.

At defendant's sentencing hearing, the state began by suggesting that all of defendant's *sentences* on the attempted aggravated murder and assault convictions should run concurrently. However, the state did not address whether any of the *counts* on which defendant had been convicted should merge pursuant to ORS 161.067. That statute provides, in part:

> "(1)   When the same conduct or criminal episode violates two or more statutory provisions and each provision requires proof of an element that the others do not, there are as many separately punishable offenses as there are separate statutory violations.
>
> "* * * * *
>
> "(3)   When the same conduct or criminal episode violates only one statutory provision and involves only one victim, but nevertheless involves repeated violations of the same statutory provision against the same victim, there are as many separately punishable offenses as there are violations, except that each violation, to be separately punishable under this subsection, must be separated from other such violations by a sufficient pause in the defendant's criminal conduct to afford the defendant an opportunity to renounce the criminal intent."

The trial court, in response, initially announced that it would, indeed, impose only concurrent sentences, but that it intended to merge the six attempted aggravated murder counts into a single conviction, merge the seven counts of second-degree assault into a single conviction, and also merge the seven assault of a public safety officer counts into a single conviction.

The state objected to the trial court's proposal, but only disputed the court's proposed disposition of the counts on which defendant was found guilty of second-degree assault. The state argued that the seven guilty verdicts for second-degree assault corresponded to "each plunge of the

knife," and so were "separate, distinct, punishable offenses" that should not merge for the purposes of conviction. The following colloquy then occurred:

"[DEFENSE COUNSEL]: Well, obviously, they're not separate offenses, punishable as such.

"THE COURT: They definitely merge for sentencing.

"[PROSECUTOR]: They merge for sentencing. I agree with the Court on that, but for the purpose of conviction, his criminal history should reflect convictions on those counts of Assault II, seven of them * * *.

"[DEFENSE COUNSEL]: It's our position, Your Honor, the Court had it correct the first time around and that they would not—that those convictions were inconsistent with the jury's findings on the primary charges.

"THE COURT: *And I don't believe that there is a showing of sufficient pause between the incidents to not merge them. I think we've got to have a finding or, at least, a showing of pause between the stab wounds.*

"[PROSECUTOR]: I agree, and that's why we're not asking the Court for consecutive sentences on those, but there's no such thing as a consecutive conviction.

"* * * * *

"[DEFENSE COUNSEL]: Well, the law certainly recognizes, Your Honor, a distinction between a verdict of guilt and a conviction entering.

"As I said in the beginning, one of the distinctions that the Court has brought here is between the convictions merging and the counts merging for sentencing purposes. It's our position that the convictions on the attempted ag[gravated] murder all merge into a single conviction, as do the convictions for the assault II's and the assault on a public safety officer.

"THE COURT: Okay. Well, based on the way they're alleged, though it has no effect that I can see of any value, I'll go ahead and enter separate convictions on [the second-degree assault counts], 23 through 28, all merged for sentencing purposes.

> "The jury did find separate acts, specifically, act or transaction different from the previous count, so they did make those separate findings on separate assaults, all part of the same continuous course of conduct, though.
>
> "And the Court has concerns that *there is no showing of sufficient pause between those,* but maybe we'll get that answered."[1]

(Emphasis added.)

There was no further discussion—specifically, with respect to the state's failure of proof of a "sufficient pause." In particular, the state never asserted that, regardless of whether the seven stabbings were sufficiently distinct to support the entry of seven convictions, there was at least a sufficient break in the sequence to justify the entry of two convictions. Ultimately, and without amplification or additional findings, the trial court entered seven convictions for second-degree assault corresponding to the seven guilty verdicts for that offense. The trial court then "merge[d] [the] sentences," *i.e.,* imposed concurrent sentences, from the second through seventh second-degree assault convictions (Counts 23 through 28) with the sentence on the first conviction (Count 22), and, in turn, "merge[d] [that] sentence," *i.e.,* imposed concurrent sentences, with the sentence of 120 months' imprisonment and three years of post-prison supervision imposed on the attempted aggravated murder conviction (Count 1).

■ On appeal, defendant assigns error to the trial court's failure to merge the seven second-degree assault counts into two counts for the purposes of conviction. Defendant contends that, with the possible exception of the interval of three to four seconds that occurred when Hinkle kicked

___

[1] As we have previously observed, some of our well-worn "shorthand" in this area has been imprecise:

"When two counts of a crime should result in a single conviction, the court should 'apply the merger statute to guilty verdicts on particular counts, rather than to "convictions." ' *State v. White,* 346 Or 275, 279 n 4, 211 P3d 248 (2009). Thus, apparently, 'merger of convictions' does not exist. Similarly, sentences are not 'merged'; when convictions for two counts or two crimes result in coterminous sentences, the sentences are concurrent."

*State v. Lepierre,* 235 Or App 391, 395, 232 P3d 982 (2010).

defendant off him and activated his body alarm, there could be no basis for determining that the individual thrusts of the shank were separated by a "sufficient pause to allow defendant to renounce his criminal intent," so as to avoid merger under ORS 161.067(3). The state remonstrates that the trial court's entry of seven second-degree assault convictions was correct, arguing that, although the pause between the stabbings was brief, it was nonetheless "sufficient" for defendant to renounce his criminal intent.

We review the trial court's ruling for errors of law. ORS 138.220. Additionally, we are bound by the trial court's findings of fact " 'if there is constitutionally sufficient evidence in the record to support those findings. Our function is to decide whether the trial court applied legal principles correctly to those facts.' " *State v. Huffman*, 234 Or App 177, 183, 227 P3d 1206 (2010) (quoting *State v. Ehly*, 317 Or 66, 75, 854 P2d 421 (1993)).

As noted, ORS 161.067(3) provides, in part:

"When the same conduct or criminal episode violates only one statutory provision and involves only one victim, but nevertheless involves repeated violations of the same statutory provision against the same victim, there are as many separately punishable offenses as there are violations, except that each violation, to be separately punishable under this subsection, *must be separated from other such violations by a sufficient pause in the defendant's criminal conduct to afford the defendant an opportunity to renounce the criminal intent.*"[2]

(Emphasis added.) The parties agree that the assaults occurred in a single criminal episode and that only one statutory provision and victim are involved. Thus, the only issue on appeal is whether the individual stabbings were "separated * * * by a sufficient pause in * * * defendant's criminal

---

[2] Other provisions of ORS 161.067 are inapposite here because each of the seven second-degree assault counts involved the same statutory provision, ORS 163.175 (2003), and the same victim. *See* ORS 161.067(1) (governing merger when a defendant's conduct violates "two or more statutory provisions and each provision requires proof of an element that the others do not"); ORS 161.067(2) (pertaining to merger when "two or more victims" are involved).

conduct to afford * * * defendant an opportunity to renounce [his] criminal intent." ORS 161.067(3).

■ In the context of ORS 161.067(3), a "sufficient pause" means "a temporary or brief cessation of a defendant's criminal conduct that occurs between repeated violations and is so marked in scope or quality that it affords a defendant the opportunity to renounce his or her criminal intent." *Huffman*, 234 Or App at 184. Additionally, the Oregon Supreme Court has held that

> "ORS 161.067(3) requires that the violations be not just 'repeated,' but also that they be separated by 'a sufficient pause in the defendant's criminal conduct.' Thus, to be separately punishable, one crime must end before another begins."

*State v. Barnum*, 333 Or 297, 303, 39 P3d 178 (2002), *overruled in part on other grounds by State v. White*, 341 Or 624, 147 P3d 313 (2006).

We amplified and applied that standard from *Barnum* in *State v. Sanders*, 185 Or App 125, 57 P3d 963 (2002), *adh'd to as modified on recons*, 189 Or App 107, 74 P3d 1105 (2003), *rev den*, 336 Or 657 (2004). There, the state charged the defendant with a number of assaults stemming from an incident in which the defendant had beaten the victim with a wooden closet rod. *Id.* at 127. One count alleged that the defendant had committed second-degree assault when he beat the victim "about her body," on her torso and thigh, with the rod. A second count alleged that the defendant had committed first-degree assault by fracturing the victim's wrist with the wooden rod when she used her hand to block a blow to her head. *Id.* A jury found the defendant guilty on both counts. *Id.*

At sentencing, the defendant argued that the trial court should have merged the guilty verdicts on the two counts because the former was a lesser-included offense of the latter and because "the two counts stemmed from the same criminal episode." *Id.* The trial court declined to merge the verdicts based on its assessment that the defendant had sufficient time "to pause and reflect" before taking aim at the victim's head. *Id.* at 128.

On appeal, we disagreed:

"As the Supreme Court held in *Barnum*, there is such a separation [for the purposes of ORS 161.067(3)] only if one assault ended before the other began. *The mere passage of time, by itself, does not establish that one assault ended before the other began.* There is no other evidence in this case that defendant's assault of victim's legs and torso 'ended' before he attempted to hit her in the head. Because of that lack of evidence, defendant cannot be punished for both assaults."

*Sanders*, 185 Or App at 130 (emphasis added). Accordingly, we reversed and remanded with instructions to merge the convictions on the two counts. *Id.* at 131.

In *State v. Sullivan*, 234 Or App 38, 227 P3d 1186, *adh'd to as modified on recons*, 235 Or App 177, 230 P3d 100 (2010), we revisited the meaning of a "sufficient pause" in the context of an ongoing assault. There, the defendant was charged with, and found guilty of, one count of first-degree assault and one count of second-degree assault, arising from the "same act or transaction" in which the "defendant assaulted [the victim] by punching him, kicking him, throwing him to the ground, then kicking him again, shortly after they left a bar." *Id.* at 40. The first-degree assault charge alleged that the defendant had caused serious physical injury by means of a dangerous weapon—*viz.*, " 'forcibly striking [the victim's] head against [a] paved surface[.]' " *Id.* The second-degree assault charge pertained to the defendant's conduct in punching and kicking the victim and then throwing the victim on the ground and kicking him again. *Id.* The trial court, over the defendant's objection, declined to merge the two guilty verdicts and imposed consecutive sentences on the resultant convictions. *Id.* at 40-41.

On appeal, we reversed, invoking *Sanders*, 185 Or App 125. In holding that the two verdicts should merge, we noted that "[n]either eyewitness [to the assaults] described any pause whatsoever between the first kick, the throwing to the ground, or the second kick, much less 'a sufficient pause in the defendant's criminal conduct to afford the defendant an opportunity to renounce the criminal intent.' " *Sullivan*, 234 Or App at 42 (quoting ORS 161.067(3)).

■ As our holdings and analysis in *Sanders* and *Sullivan* demonstrate, in circumstances akin to those presented here, where a defendant has been found guilty on multiple counts of assault arising from the same criminal episode and involving the same victim, the court must merge those guilty verdicts unless the state proves that "one assault ended before the other began." *See Sanders*, 185 Or App at 130. Further, in that regard, "[t]he mere passage of time, by itself, does not establish that one assault ended before the other began." *Id.*

In this case, the state presented evidence only of one interval of between three and four seconds after Hinkle kicked defendant off him and before defendant resumed his attack. There was no evidence as to any other temporal break in the seriatim stabbings. The trial court, which was fully cognizant of that evidence (and lack of evidence), explicitly stated that "I don't believe that there is a showing of sufficient pause between the incidents to not merge them" and that there was "no showing of sufficient pause" for the purposes of the anti-merger provision of ORS 161.067(3). *See* 236 Or App 343-44. Given that express determination, the trial court erred when it failed to merge the guilty verdicts on seven counts of second-degree assault into one conviction for second-degree assault.

Finally, we fully appreciate that defendant, on appeal, has urged that the seven second-degree assault verdicts should be merged into *two* convictions, rather than one—based on the apparent misapprehension that defendant's trial counsel conceded that there was a sufficient pause for the purposes of ORS 161.067(3) to support the entry of two convictions. Thus, the disposition we direct is more favorable than that sought by defendant. Nevertheless, we do so for two reasons. First, as a factual matter, our review of the record does not disclose such a concession, which might otherwise partake of invited error. Second, as a matter of law, given the trial court's "no showing of sufficient pause" determination, this record permits only one legally correct outcome with respect to the proper operation of ORS 161.067(3). Consequently, any misapprehension by appellate counsel as to the proper disposition is immaterial—that is,

we will not remand with directions to enter a legally errone-ous sentence. *Accord State v. Miller*, 345 Or 176, 186 n 7, 191 P3d 651 (2008) (A party's "concession" about a question of law "means only that the party agrees with (and chooses not to contest) a particular legal conclusion. Consequently, this court is not obliged to accept such concessions at face value.").

Convictions for second-degree assault reversed and remanded with instructions to merge guilty verdicts on those counts into one conviction for second-degree assault and for resentencing; otherwise affirmed.