Submitted February 19, 2013, affirmed March 26, 2014

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

ROBERT JAMES KING,
*Defendant-Appellant.*

Jackson County Circuit Court
100612AFE; A147077

322 P3d 597

Peter Gartlan, Chief Defender, and Kristin A. Carveth, Deputy Public Defender, Office of Public Defense Services, filed the brief for appellant.

John R. Kroger, Attorney General, Anna M. Joyce, Solicitor General, and Greg Rios, Assistant Attorney General, filed the brief for respondent.

Before Duncan, Presiding Judge, and Wollheim, Judge, and Schuman, Senior Judge.

WOLLHEIM, J.

**WOLLHEIM, J.**

Defendant, who was convicted of third-degree assault, ORS 163.165(1)(e) and misdemeanor fourth-degree assault, ORS 163.160(1)(a), appeals the judgment of conviction, asserting that the trial court erred in failing to merge the two guilty verdicts into a single conviction. As explained below, we conclude that the trial court properly entered separate convictions. Accordingly, we affirm.

Because defendant was convicted, we state the evidence and all reasonable inferences in the light most favorable to the state. *State v. Johnson*, 342 Or 596, 598, 157 P3d 198 (2007), *cert den*, 552 US 1113 (2008). After defendant and his friends were asked to leave a bar multiple times by one of its employees, defendant punched the employee. The victim managed to subdue defendant, wrestling him to the floor. At that point, one of defendant's friends attacked the victim from behind and began hitting him, and defendant managed to break free. When the victim was able to throw off defendant's friend, defendant then picked up a bar stool and hit the victim with it, after which defendant hit and kicked the victim while defendant's friend choked the victim. Defendant and his friend fled and were subsequently arrested. Most of the fight was recorded on the bar's video system, and the video was introduced into evidence at trial.

Defendant was charged with third-degree assault for causing physical injury to the victim while being aided by another person actually present, ORS 163.165(1)(e), and with fourth-degree assault for having recklessly caused physical injury to the victim, ORS 163.160(1)(a). A jury found defendant guilty of both offenses.

At sentencing, both parties presented arguments in support of the presumptive sentence for the third-degree assault of three years' probation, with the state advocating for the maximum amount of jail time as a condition of probation, and defense counsel advocating for less jail time. The trial court agreed with the state's sentencing recommendation, describing at length the numerous bad choices defendant had made in the course of the events shown on the video. The trial court sentenced defendant to three years of supervised probation, 90 days in jail, and the general

conditions of probation. The court then asked about the verdict on fourth-degree assault, and the prosecutor stated, "I think they're probably gonna end up merging." Defense counsel stated, "Yeah, Count 2 merges with Count 1, Your Honor." Immediately thereafter, the trial court stated:

> "I only see—all I see in my head is you guys beating that guy up and kicking him. I can't get past that, it's just in my head. That video had an effect on me. That's all I see. This guy, man, he's just doing his job, you screwed up his back, he's got a family. His wife has to—I mean, he has a family and a kid. He didn't hit you. He was on top of you trying to restrain you. He wasn't punching * * *. He wasn't punching you. I saw it he was on top of you just holding you down, just holding you down. At that point you should have just stopped. He was just holding you down. You should have stopped your buddy too, which you didn't do. That's 11 bad decisions.[1]"

The court then announced that, on the fourth-degree assault verdict, it would sentence defendant to 18 months' bench probation. The court then waived various fees with respect to the fourth-degree assault, but stated that restitution would be imposed "for both counts." The court then indicated that it was contemplating imposing additional jail time on the fourth-degree assault conviction, but ultimately did not do so, telling defendant: "Consider yourself lucky." The judgment similarly reflected that the court imposed a three-year probationary sentence on the third-degree assault conviction and an 18-month probationary sentence on the misdemeanor fourth-degree assault conviction.

On appeal, defendant asserts that ORS 161.067(3) required merger of the guilty verdicts on third- and fourth-degree assault. As an initial matter, we consider whether defendant adequately preserved that issue. As defendant observes, in *State v. Sullivan*, 234 Or App 38, 40, 227 P3d 1186, *modified on recons*, 235 Or App 177, 230 P3d 100 (2010), we concluded that a defendant had adequately preserved a

---

[1] The court had earlier counted 10 "bad decisions" that defendant had made in the course of the incident. Throughout the sentencing proceeding, defendant interjected at points that the victim had hit him, and that he had not hit the victim with the bar stool, and that he had "blacked out" and had no memory of the incident. Several of the trial court's remarks reflect that the court did not accept defendant's version of events.

merger argument, where the record reflected that the prosecutor indicated an assumption that two counts of assault "would have merged," and defense counsel stated, "I would concur, these matters should merge into one." In that case, the court indicated that it would either merge the counts or run the sentences concurrently, adding, "I don't know if it makes a difference." *Id.* at 41. We agree with defendant that the present case is similar to *Sullivan* with respect to the preservation issue. That is, in this case, as in *Sullivan*, both parties made brief statements on their legal positions as to merger, and the record reflects that the trial court considered merger to be an issue that it needed to address. Thus, although it is true that defendant did not cite ORS 161.067(3) or discuss its specific provisions concerning when merger is required, we conclude that the record reflects that the trial court properly understood and applied that statute. *See State v. Walker*, 350 Or 540, 550, 258 P3d 1228 (2011) (explaining that "the realities of trial practice may be such that fairly abbreviated short-hand references suffice to put all on notice about the nature of a party's arguments").

ORS 161.067(3) provides, in pertinent part:

"When the same conduct or criminal episode violates only one statutory provision and involves only one victim, but nevertheless involves repeated violations of the same statutory provision against the same victim, there are as many separately punishable offenses as there are violations, except that *each violation, to be separately punishable under this subsection, must be separated from other such violations by a sufficient pause in the defendant's criminal conduct to afford the defendant an opportunity to renounce the criminal intent.*"

(Emphasis added.) Defendant asserts that, because the fourth-degree assault was a lesser-included offense of the third-degree assault and therefore the "same statutory provision" for purposes of ORS 161.067(3), the court was required to merge the guilty verdicts on those counts because each violation was not separated from the other by a sufficient pause to afford defendant an opportunity to renounce his criminal intent. The state responds that the record supports the trial court's conclusion that the assaults here were separated by a sufficient pause to afford defendant an

opportunity to renounce his criminal intent. We agree with the state.

A "sufficient pause" between assaults can occur "only if one assault ended before the other began. The mere passage of time, by itself, does not establish that one assault ended before the other began." *State v. Sanders*, 185 Or App 125, 130, 57 P3d 963 (2002), *modified on recons*, 189 Or App 107, 74 P3d 1105 (2003), *rev den*, 336 Or 657 (2004). Defendant contends that this case is similar to *Sanders*, and to *State v. Watkins*, 236 Or App 339, 236 P3d 770, *rev den*, 349 Or 480 (2010), in which we held that guilty verdicts on assaults should have merged into a single conviction. A comparison of those cases, as well as *State v. Aitken*, 255 Or App 17, 296 P3d 587, *rev den*, 353 Or 867 (2013) (decided after this case was briefed), to the facts of this case, is instructive.

In *Sanders*, the issue was whether the trial court should have merged guilty verdicts on first- and second-degree assault. The defendant was beating the victim's body with a wooden rod and, when he aimed the rod at her head, she put up her arm to block the blow and defendant fractured her wrist. 185 Or App at 127. The court noted that there was no evidence of a pause in defendant's conduct of any measurable duration, and rejected the state's suggestion that directing a blow to a different part of a victim's body implied a sufficient pause between the blows for a defendant to renounce criminal intent. "There is no evidence in this case that defendant's assault on the victim's legs and torso 'ended' before he attempted to hit her in the head." *Id.* at 130. Accordingly, we held that the trial court erred in not merging the guilty verdict for second-degree assault into the guilty verdict for first-degree assault, and we reversed and remanded for resentencing.

In *Watkins*, the defendant was charged with numerous counts of second-degree assault, based on his attack on a corrections officer:

> "Defendant attacked Hinkle without warning, tackled him, and began stabbing him. At one point, after defendant had stabbed him several times, Hinkle managed to kick defendant away from him and activate an alarm on his waistband to summon help. Within a span of three to

four seconds, defendant watched Hinkle activate the alarm
and then resumed his attack."

236 Or App at 341. In that case, we noted that there was
evidence "only of one interval of between three or four sec-
onds after Hinkle kicked defendant off him and before
defendant resumed his attack." *Id.* at 348. We further noted
that the trial court in that case explicitly found that there
had been "no showing of sufficient pause" for purposes of
ORS 161.067(3). *Id.* Again we reversed and remanded with
instructions to merge all of the guilty verdicts for second-
degree assault into one conviction.

By contrast, in *Aitken,* we found that multiple
assaults on the same victim were separated by "sufficient
pause." In that case, the defendant first assaulted Torres
with a knife, after which the victim, Walker, entered the
room and asked what was going on. The defendant stabbed
Walker twice in the back, then turned back to Torres and
attacked Torres again. Walker then stepped between Torres
and the defendant and held the defendant back, at which
point the defendant stabbed Walker in both arms. 255 Or
App at 18. The trial court merged the two guilty verdicts
for stabbing Walker in both arms into a single conviction
for first-degree assault. The trial court also merged the
two convictions for stabbing Walker twice in the back into
a single conviction for second-degree assault. On appeal,
the defendant argued that the trial court was required to
merge the conviction for stabbing Walker twice in the back
into the conviction for stabbing Walker's arms. We rejected
the defendant's argument that the guilty verdicts should
merge. We noted that the defendant had stabbed Walker's
back when he first entered the room, and then subsequently
had stabbed him in the arms "after Walker intervened to
prevent defendant from attacking Torres." *Id.* at 23-24. In
sum, between the first assault for twice stabbing Walker in
the back and second assault for twice stabbing Walker in
the arms, the defendant had attempted to resume his attack
on Torres, was prevented from doing so by Walker, and
then assaulted Walker a second time because of Walker's
intervention. In those circumstances, we concluded that
the record supported the trial court's finding of a sufficient
pause for the defendant to renounce his criminal intent.

We conclude that the present case is more like *Aitken* than like *Sanders* and *Watkins*. In *Sanders* and *Watkins*, there were not significant pauses between the multiple attacks on the victims. That is, although in *Sanders* different parts of the victim's body were struck, and in *Watkins* the assault was briefly interrupted when the victim managed to get away for a few seconds and pull an alarm, nothing in those cases indicated that the defendants had ceased assaulting the victims, and then had assaulted the victims again after a pause sufficient for them to renounce criminal intent. Here, by contrast and similar to *Aitken*, something of significance did occur between the first and second assaults, as the trial court specifically noted. That is, defendant first assaulted the victim by punching him in the face. The victim then grappled with defendant and had effectively subdued him when defendant's friend entered the fray, jumped on the victim, and in the process of doing so, freed defendant. At that point, as the trial court specifically noted, defendant had been subdued and "should have just stopped." Instead, however, after defendant's friend freed defendant from the victim's grasp, defendant re-entered the fray, hitting the victim with a bar stool and kicking him. The trial court stated, "I see that guy getting kicked in the head or kicked in the back when he was on the ground. Not very sporting, man. Maybe one on one is more sporting, okay? * * * And then taking a chair to somebody's back is pretty cowardly. You knew what you were doing."

In sum, the evidence shows that defendant initially assaulted the victim by punching him, and that assault ended with the victim getting the better of defendant, restraining defendant on the ground. Rather than renounce his criminal intent at that point, however, defendant instead joined with his friend in a two-on-one assault on the victim, and hit the victim with a bar stool. In those circumstances, we conclude that the trial court's finding that there was a sufficient pause between the assaults for defendant to have renounced his criminal intent is supported by evidence in the record.

Affirmed.