ORTEGA, P.J.
*24 Defendant appeals a judgment in which he was convicted of (1) failure to report as a sex offender that he changed residence, former ORS 181.812(1)(d) (2013) (Count 1), and (2) failure to report as a sex offender by failing to make an annual report, former ORS 181.812(1)(e) (2013) (Count 2).[1] He assigns error to the trial court's failure to merge the two guilty verdicts, arguing that the subsections of former ORS 181.812 under which he was charged are merely two ways of committing the same crime. He also assigns as plain error the trial court's imposition of $628 in court-appointed attorney fees because the court lacked the authority to do so in the absence of evidence that defendant could pay the fees. The state concedes that the trial court plainly erred as to the imposition of attorney fees, and we accept the state's concession. As for defendant's merger argument, we conclude that the crimes of conviction are separate crimes and, therefore, the trial court did not err in declining to merge his convictions.
We begin with defendant's argument that the trial court erred by not merging the guilty verdicts, a ruling that we review for legal error. State v. Black , 270 Or. App. 501, 504-05, 348 P.3d 1154 (2015). Defendant was charged with the following two counts of failure to report:
"COUNT 1
"The defendant, on or about December 11, 2014, in Washington County, Oregon, being a person who was required by law to report in person, as a sex offender, to the Department of State Police, a chief of police or a county sheriff or, if the person is under supervision, to the supervising agency, within 10 days of a change of residence in this state, having changed residence in this state and having knowledge of the reporting requirement, did feloniously fail to report as required.
*25 "COUNT 2
"The defendant, on or about December 11, 2014, in Washington County, Oregon, being a person who was required by law to report in person, as a sex offender, to the Department of State Police, a chief of police or a county sheriff or, if the person is under supervision, to the supervising agency, within 10 days of his birth date, and having knowledge of the reporting requirement, did unlawfully fail to make an annual report , as required, to an appropriate *20 agency or official within 10 days of his birth date."
(Emphases added.) Count 1 was alleged as a violation of former ORS 181.812(1)(d), which provides that a person who is required to report as a sex offender commits the crime of failure to report if the person "[m]oves to a new residence and fails to report the move and the person's new address." Count 2 was alleged as a violation of former ORS 181.812 (1)(e), which provides that a person who is required to report as a sex offender commits the crime of failure to report if the person "[f]ails to make an annual report." Defendant pleaded guilty to both counts.
At sentencing, defendant argued that, under ORS 161.067(1) (the "anti-merger" statute), the guilty verdicts for the two failure to report counts should merge, because the two offenses violate only one statutory provision.[2] The trial court rejected defendant's argument, concluding that the failure to report provisions that defendant was charged with violating are "separate laws" and also have "separate classifications," in that one is classified as a misdemeanor and the other as a felony under former ORS 181.812. Failure to report as a sex offender is a Class A misdemeanor, former ORS 181.812(3)(a), except when, among other exceptions, the crime for which the person is required to report is a felony and the person fails to report having moved to a new residence, former ORS 181.812(3)(b)(B). Because defendant's sex offense convictions were felonies, his failure to *26 report a change of address is a felony offense, and his failure to make an annual report is a misdemeanor offense.
On appeal, defendant reprises his merger argument, asserting that his two offenses are violations of the same statutory provision, because each subsection reflects "one unified legislative objective." See State v. White , 346 Or. 275, 283-84, 211 P.3d 248 (2009) (the analysis to determine whether the legislature intended to create a single crime or two separate crimes "includes consideration of whether the sections, although addressing different concerns, also may address, on a more general level, one unified legislative objective"). According to defendant, the fact that the legislature did not separate each of the specified ways that a person can fail to satisfy the sexual offender registration requirements into different statutory sections is "clear evidence that failure to report after a move and failure to report annually are multiple ways to commit a single crime." Defendant compares former ORS 181.812 to other statutes where courts have held that separate paragraphs in a statute do not create separate crimes. See White , 346 Or. at 290, 211 P.3d 248 (holding that separate paragraphs in the second-degree robbery statute do not create separate crimes); State v. Slatton , 268 Or. App. 556, 570, 343 P.3d 253 (2015) (holding that separate paragraphs in the first-degree theft statute, ORS 164.055, do not create separate crimes). Defendant also challenges the trial court's reasoning that, because the offenses involved two different classifications-felony and misdemeanor-they were separate crimes. Unlike State v. Colmenares-Chavez , 244 Or. App. 339, 346, 260 P.3d 667, rev. den. , 351 Or. 216, 262 P.3d 402 (2011), in which we explained that the trial court's decision to not merge guilty verdicts for first-degree robbery and second-degree robbery was proper, in part, because those offenses were assigned different punishments, defendant contends that the offense of failure to report is different because it does not distinguish between "different degrees of an incrementally graded offense."
The state first responds that defendant places too much emphasis on the structure of former ORS 181.812, asserting that the structure of the statute is not dispositive. The state points to the Supreme Court's reasoning in White that "determining whether a defendant violated one *27 statutory provision or two statutory provisions does not depend entirely on the structural form that the criminal statute takes." 346 Or. at 280, 211 P.3d 248. Moreover, the state posits that, because former ORS 181.812 was not enacted *21 as part of the criminal code, it did not conform to the typical format the legislature uses for crimes in the criminal code. Further, the state maintains that the reasoning in Colmenares-Chavez applies to former ORS 181.812, and that the categorization of the failure-to-report offenses as different punishment classifications evinces the legislature's intent that they are separate crimes. Most importantly, the state asserts, the sex offender registration statutes impose on sex offenders a number of separate, independent obligations to report and, therefore, the provisions under former ORS 181.812 that criminalize failures to satisfy those separate and independent reporting requirements are also separate statutory provisions.
We agree with the state. For a single criminal act or criminal episode to give rise to more than one statutory violation,[3] three requirements must be satisfied: "(1) defendant must have engaged in acts that are 'the same criminal conduct or episode'; (2) defendant's acts must have violated two or more 'statutory provisions'; and (3) each 'statutory provision must require proof of an element that the others do not.' " State v. Parkins , 346 Or. 333, 348, 211 P.3d 262 (2009) (quoting State v. Crotsley , 308 Or. 272, 278, 779 P.2d 600 (1989) ). At issue in this case is whether defendant's acts violated two or more statutory provisions; hence, our "fundamental inquiry" is to determine "whether the text, context, and legislative history of the statute demonstrate that the legislature intended to create a single crime or two *28 separate crimes." Slatton , 268 Or. App. at 561, 343 P.3d 253. Because under former ORS 181.806, ORS 181.807, ORS 181.808, and ORS 181.809, a sex offender has separate and distinct obligations to report based on the circumstances, we conclude that the legislature intended the provisions criminalizing the failure to meet those reporting obligations to be concomitantly separate and independent statutory provisions for purposes of the anti-merger statute. In light of the text and context of former ORS 181.812,[4] it is plain that the paragraphs constitute individual and separate crimes that prevent merger of the guilty verdicts in this case.
To begin with, former ORS 182.812(1) provided, in relevant part, that the criminal punishment imposed for the failure to report applies to a person who is
"required to report as a sex offender in accordance with the applicable provisions ORS 181.806, 181.807, 181.808 or 181.809 and who has knowledge of the reporting requirement[.]
Former ORS 181.806, ORS 181.807, ORS 181.808, or ORS 181.809 (2013) require persons convicted of a sex offense and released from prison, former ORS 181.806, placed on probation, former ORS 181.807, who have moved to Oregon (or nonresidents working or attending school in Oregon), former ORS 181.808, and juveniles adjudicated in juvenile court of sex crimes, former ORS 181.809, to comply with reporting requirements set out in each of the sections. Common to each of the provisions is the requirement of making *22 an initial report, which must occur within 10 days of the event applicable to the section, i.e. , release from prison, placement on probation, or moving to Oregon. For example, a person released from prison must, within 10 days following the discharge or release, report in person to a law enforcement *29 agency in the county in which the person was released or otherwise placed. That is, the initial report must occur
"[w]ithin 10 days following discharge, release on parole, post-prison supervision or other supervised or conditional release[.]"
Former ORS 181.806(3)(a)(A). If a person required to report has filed an initial report, then the person must "subsequently report, in person, in the circumstances specified in paragraph (a) of this subsection, as applicable," to a law enforcement agency in the county to which the person was released or otherwise placed. The "circumstances" in which the person is subsequently required to report are the following:
"(B) Within 10 days of a change of residence;
"(C) Once each year within 10 days of the person's birth date, regardless of whether the person changed residence ;
"(D) Within 10 days of the first day the person works at, carries on a vocation at or attends an institution of higher education; and
"(E) Within 10 days of a change in work, vocation or attendance status at institution of higher education."
Former ORS 181.806(3)(a) (emphasis added.) It is obvious from the text that each of the reporting requirements is separate and independent; satisfying one requirement does not obviate the need to satisfy the other requirements. For example, a sex offender, under former ORS 181.806(3)(a)(A), is required upon release from incarceration or placement on probation to file an initial report. A sex offender's reporting obligations are not satisfied by that initial report-the other reporting requirements must also be met subsequent to the initial report. Similarly, the statute explicitly states that a sex offender required to report must file an annual report "regardless of whether the person changed residence." Former ORS 181.806(3)(a)(C) (emphasis added).
With that in mind, we turn to former ORS 181.812, which makes it a crime to fail to satisfy the reporting requirements of former ORS 181.806 to 181.809. Former ORS 182.812(1) provided, in relevant part, that a
*30 "person who is required to report as a sex offender in accordance with the applicable provisions of ORS 181.806, 181.807, 181.808 or 181.809 and who has knowledge of the reporting requirement commits the crime of failure to report as a sex offender if the person:
"(a) Fails to make the initial report to an agency;
"(b) Fails to report when the person works at, carries on a vocation at or attends an institution of higher education;
"(c) Fails to report following a change of school enrollment or employment status, including enrollment, employment or vocation status at an institution of higher education;
"(d) Moves to a new residence and fails to report the move and the person's new address;
"(e) Fails to make an annual report;
"(f) Fails to provide complete and accurate information;
"(g) Fails to sign the sex offender registration form as required; or
"(h) Fails to submit to fingerprinting or to having a photograph taken of the person's face, identifying scars, marks or tattoos."
Given that those provisions track the separate, independent reporting requirements set out in former ORS 181.806 to 181.809, it follows that failures to meet those reporting requirements also are separate and independent. Thus, because former ORS 181.812 is meant to work in tandem with the separate and independent reporting requirements set out in former ORS 181.806 to 181.809, we readily conclude that the legislature intended that the failure to file an annual report and failure to report a change of address are separate statutory provisions.
That conclusion distinguishes the failure to report statute from the offense of second- *23 degree robbery; the Supreme Court held in White that the two circumstances that elevate third-degree robbery to second-degree robbery-purporting to be armed with a dangerous weapon and having an accomplice-"address the same coercive effect on the *31 victim of the threat of violence, even though they do so in different ways." 346 Or. at 291, 211 P.3d 248. Thus, the court held, the legislature created a single crime of second-degree robbery. Id . ; see also Slatton , 268 Or. App. at 558, 343 P.3d 253 (similarly concluding that ORS 164.055(1)(a) and (d) (theft of a firearm and theft of property valued at least $1,000) are different theories to elevate the basic offense of theft to a more serious-and single-offense). In contrast, the offense of failure to report reflects the legislature's intention to require convicted sex offenders to satisfy each of multiple reporting requirements. There is no single reporting obligation but, rather, several reporting obligations, and former ORS 181.812 provides that the failure to meet any one of them is punishable. Further, the legislature's decision to generally classify the failure to file an annual report as a misdemeanor and, if convicted of a felony sex offense, a failure to report moving to a new address as a felony crime, bolsters the conclusion that former ORS 181.812(1)(d) and former ORS 181.812 (1)(e) state separate crimes. The difference in seriousness indicates that a failure to report a change in address by a convicted sex felon is of greater concern than the failure to file an annual report, and that the failures are therefore distinct criminal offenses. See Colmenares-Chavez , 244 Or. App. at 346, 260 P.3d 667 (concluding, in part, that first-degree robbery and second-degree robbery are different statutory provisions because they have different punishments). The trial court therefore did not err in declining to merge defendant's guilty verdicts.
We turn next to defendant's assignment of error asserting that the trial court imposed court-appointed attorney fees without sufficient evidence in the record to support a finding that defendant "is or may be able to pay" them. See ORS 151.505(3) ("The court may not require a person to pay costs under this section unless the person is or may be able to pay the costs."); ORS 161.665(4) ("The court may not sentence a defendant to pay costs under this section unless the defendant is or may be able to pay them."). Defendant failed to preserve the claimed error but asks us to review the imposition of fees as plain error. See ORAP 5.45(1) ("[T]he appellate court may, in its discretion, consider a plain error.").
*32 It is well established that it is plain error for a trial court to require a defendant to pay court-appointed attorney fees in the absence of legally sufficient evidence that the defendant has the ability to pay the amount imposed. State v. Coverstone , 260 Or. App. 714, 716, 320 P.3d 670 (2014). "A court cannot impose fees based on pure speculation that a defendant has funds to pay the fees or may acquire them in the future." State v. Pendergrapht , 251 Or. App. 630, 634, 284 P.3d 573 (2012). It is the state's burden to prove that a defendant "is or may be able to pay" attorney fees. State v. Kanuch , 231 Or. App. 20, 24, 217 P.3d 1082 (2009).
In this case, the record is silent as to whether defendant has the ability to pay the amount imposed. Indeed, defendant's testimony (in explanation of why he failed to register) supports a contrary conclusion. Defendant at the time of sentencing had been released from prison for two and one-half years after serving a 21-year sentence, had lost his job, lost his residence, and "was sleeping wherever [he] could."
The state concedes that the trial court plainly erred in imposing the fees; we accept that concession and conclude that, given the amount of the fees and the absence of evidence regarding defendant's ability to pay at the time of sentencing, it is appropriate for us to exercise our discretion to correct the error. See State v. Ramirez-Hernandez , 264 Or. App. 346, 349, 332 P.3d 338 (2014) (exercising discretion to correct erroneous imposition of $400 in court-appointed attorney fees because the amount was "substantial" in light of defendant's circumstances).
Portion of judgment requiring defendant to pay court-appointed attorney fees reversed; otherwise affirmed.

Defendant was charged with conduct alleged to have occurred in December 2014, and convicted under former ORS 181.812 (2013). That statute has since been renumbered and amended as ORS 163A.040 ; Or. Laws 2015, ch. 820, § 9; Or. Laws 2016, ch. 95, § 4a; Or. Laws 2017, ch. 418, § 1. The reporting statute, now codified at ORS 163A.025, was also amended in 2015. See Or. Laws 2015, ch. 820, § 8.

ORS 161.067(1) provides, as relevant:
"When the same conduct or criminal episode violates two or more statutory provisions and each provision requires proof of an element that the others do not, there are as many separately punishable offenses as there are separate statutory violations."

On appeal, the parties dispute whether defendant's conduct constituted the "same conduct or criminal episode." Defendant argues that, because his guilty plea included an admission that the two charged offenses occurred on or about the same day-December 11, 2014-the two offenses were "the same conduct or criminal episode." The state counters that the indictment alleged that the offenses occurred "on or about December 11, 2014" (emphasis added), and that the imprecision of the date in the allegations was sufficiently broad to allow for proving the actual date of the crimes. Further, the state points out that the crimes did not occur on the same date and that the crimes were, in fact, for separate criminal conduct. The state's argument, however, depends on facts that are not in the record and, for the purpose of this appeal, we assume, without deciding, that defendant's offenses arose from the same conduct or criminal episode.

Here, the parties provide interpretations of the legislative history of the versions of the reporting requirement scheme, but, in this case, a discussion of the legislative history is not more illuminating than the express text of the statutes at issue. See State v. Gaines , 346 Or. 160, 170-71, 206 P.3d 1042 (2009) ("[T]he legislature also intended the court to retain the authority to determine, as a discretionary matter, what weight, if any, to give that legislative history. A court need only consider legislative history 'for what it's worth'-and what it is worth is for the court to determine."). "[T]here is no more persuasive evidence of the intent of the legislature than the words by which the legislature undertook to give expression to its wishes." Id . at 171, 206 P.3d 1042 (internal quotation marks omitted.)